IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 08-28 |
| | ) | ELECTRONICALLY FILED |
| DERRICK STEVEN CLEMONS | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO DEFENDANT'S MOTION TO SUPPRESS**

**February 17, 2010**

### I. INTRODUCTION

Before this Court is Defendant Derrick Clemons' Motion to Suppress Evidence seized as a result of a strip search on October 13, 2007. (Doc. No. 49). After careful consideration of the motion and memorandum of law in support of said motion, the Government's response and memorandum of law in opposition, and after an evidentiary hearing conducted on December 7, 2009, the Court will **DENY** the Motion to Suppress Evidence (Doc. No. 49) on all grounds.

### II. FINDINGS OF FACT

The grand jury returned a one-count Indictment against Defendant Derrick Steven Clemons charging him with the crime of possessing with the intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance (in violation of Title 21, U.S.C §841(a)(1) and 841(b)(1)(B)(iii)).

The Indictment was based on drugs seized from Clemons' person during a strip search that occurred following his October 13, 2007 arrest.

Defendant Clemons was observed by Indiana Borough Police Detective John Scherf as he was walking along Philadelphia Street in Indiana, Pennsylvania on October 13, 2007, at approximately 10:00 p.m. [1]

Detective Scherf is a 13-year veteran of the Indiana Borough Police Department in Indiana, Pennsylvania, and a federally deputized task force officer with the FBI Safe Streets Task Force. This Court finds that Detective Scherf is a credible witness based on his experience and training.

Prior to observing Clemons on the evening of October 13, 2007, Detective Scherf was advised by Pennsylvania State Trooper Michael Zimmerman that there were three outstanding warrants for sales of narcotics to a confidential informant (CI) by Defendant. (April 6, 2006, CI purchased $300 worth of powder cocaine from Defendant at a residence on Laurel Street in Indiana, Pennsylvania; April 13, 2006, CI purchased $400 worth of crack cocaine from Defendant at Clemons' residence on Martin Road in Indiana, PA; April 18, 2006, CI purchased $600 worth of crack cocaine from Defendant at the Chevy Chase tennis courts in Indiana, PA).

Corporal Michael Zimmerman has been a member of the Pennsylvania State Police since October of 1998.[2] Corporal Zimmerman was assigned to the Vice & Narcotics Unit from August 2005 until March 2009 and conducted 126 arrests within the Vice and Narcotics Squad and was involved in many others. Based on his experience and training, this Court finds that

---

[1] The arrest occurred during Homecoming weekend at Indiana University of Pennsylvania. As such, there was an increased police presence, including borough police, state police, and officers on horseback.

[2] At the time of Clemons' arrest, Corporal Zimmerman held the rank of Trooper. In March 2009, Zimmerman was promoted to the rank of Corporal. For continuity, he will be referred to as Corporal Zimmerman throughout.

Corporal Zimmerman is a credible witness.

After observing Clemons walking westbound in the 500 block of Philadelphia Street at approximately 10:15 pm, Detective Scherf called Corporal Zimmerman via cell phone and advised Zimmerman that he had "a visual" on Clemons.

As Corporal Zimmerman was not in the immediate vicinity, it was mutually agreed that Detective Scherf would attempt to effectuate the arrest of Clemons and then notify Corporal Zimmerman when Clemons had been arrested.

After backup officers arrived to assist Detective Scherf, Clemons was arrested by Detective Scherf and taken into custody without incident.

A pat-down of Clemons at the scene of arrest revealed a large amount of cash and two cellular telephones. The cash and cell phones were not removed from Clemons' person at the time, but were placed back into Clemons' pockets prior to transportation.

Detective Scherf contacted Corporal Zimmerman via telephone and notified him that Clemons was in custody. Detective Scherf testified that he "advised Trooper Zimmerman [during the telephone call] that [they] needed to make sure if [Mr. Clemons] was apprehended that [they] needed to do a very thorough search because [he] had this information [from the confidential informant]." (Tr. 19).

Following his arrest, Clemons was transported to the Indiana Borough Police Department and placed in an interview room to await Corporal Zimmerman's arrival.

Pursuant to departmental policy, Clemons was handcuffed while in the interview room.

Approximately 30 minutes after Clemons was transported to the police station, Corporal Zimmerman arrived and entered the interview room.

In light of information regarding Clemons' drug trafficking activities, including the three controlled buys and information from a confidential informant regarding Clemons' concealment of contraband, Detective Scherf and Corporal Zimmerman decided that a strip search of Clemons was necessary and warranted.

At the Suppression Hearing, both Corporal Zimmerman and Detective Scherf testified that the cell phones found on Clemons were constantly ringing while Clemons was at the Borough Police Department. Both Detective Scherf and Corporal Zimmerman testified that it is common for individuals involved in narcotics trafficking to have multiple cell phones.

In the more than 10 years Detective Scherf had known of and investigated Clemons, Detective Scherf had prior knowledge of Clemons' history of drug trafficking activities as a result of the following: 1) Clemons' interactions with the Indiana Borough Police Department; 2) Police reports; 3) Information from confidential informants; 4) Citizen complaints; 5) Fellow police officers; and 6) The three controlled drug purchases supervised by Corporal Zimmerman that were sold by Clemons.[3]

Prior to Clemons' arrest on October 13, 2007, Detective Scherf received particular information from a reliable confidential informant regarding the fact that Clemons was known to hide or keep his drugs in his underwear.

In 2005, the confidential informant told Detective Scherf about a 2003 incident in which Clemons fled on foot from an Indiana Borough Police Department Officer. The confidential

---

[3] Detective Scherf was also aware of Clemons' propensity for violence including resisting arrest and assaulting Detective Scherf and another officer and an incident in which Clemons assaulted a male who was found unconscious in the street. A confidential informant also relayed that Clemons was in possession of a .357 caliber firearm when engaged in a controlled buy from Clemons. (Tr. 24).

informant related a conversation with Clemons in which Clemons admitted he was running from the police because he was holding controlled substances in his underwear because Clemons had been able to discard the controlled substances prior to being apprehended by the police.

Detective Scherf was aware of the incident the confidential informant had described and was able to corroborate the informant's description by reviewing the January 2003 police incident report. This particular confidential informant had proven reliable to Detective Scherf in the past, through corroborated and substantiated information as well as successful controlled buys supervised by Detective Scherf.

Detective Scherf discussed the confidential informant's statements regarding the 2003 incident with Detective Scott Schuller who was involved in particular chase with Clemons. [4] Based on the confidential informant's information, prior to Clements' arrest, Detectives Scherf and Schuller discussed the fact that if Clemons was taken into custody, a thorough search needed to be conducted to determine if Clemons was concealing drugs in his underwear.

Detective Schuller was not present for or involved in Clemons' October 13, 2007 strip search.

Detective Schuller's testimony at the suppression hearing corroborates the information provided by the confidential informant.

---

[4] Detective Schuller (an officer with the Indiana Borough Police Department with 15 years of experience) credibly testified at the suppression hearing regarding the January 2003 incident and stated that Detective Scherf told him "Clemons had it [controlled substance] on his person somewhere in the underwear area and then had fled on foot." (Tr. 97). This was further discussed by the Detectives on the Tuesday or Wednesday before Clemons' October 13, 2007 arrest. Detective Schuller's testimony corroborates information provided by the confidential informant and Detective Scherf's testimony that a confidential informant had previously told him that Clemons hides drugs in his underwear.

Detective Scherf is aware, based upon training and personal experience, that it is common for drug traffickers to hide contraband in their underwear or body cavities.

Detective Scherf and Trooper Zimmerman conducted a strip search of Clemons while in the interview room of the Indiana Borough Police Department.

Clemons' handcuffs were removed in order to properly effectuate the strip search.

The visual strip search was conducted by Trooper Zimmerman and witnessed by Detective Scherf.

Clemons' shirt, socks, shoes, and outer garments were removed. Clemons stepped out of his pants so they could be checked for inside pockets and compartments.

Clemons pulled down his underwear and was asked to bend over so the officers could see his buttocks area. In doing so, Corporal Zimmerman observed a large bag of what appeared to be knotted baggy corners of crack cocaine, cocaine, and other controlled substances. Corporal Zimmerman removed the bag from Clemons' crotch area.

### III. CONCLUSIONS OF LAW

The United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Am. IV. The Amendment functions to "safeguard privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Mun. Ct. Of City and County of San Francisco, 387 U.S. 523, 528 (1967).

"As a general matter, warrantless searches are unreasonable." United States v. Whitted, 541 F.3d 480, 484 (3d. 2008) (citations omitted). Search incident to a lawful arrest is a reasonable warrantless search and permits a "full search of the person [and] is not only an

exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable' search under that Amendment." United States v. Robinson, 414 U.S. 218. 235 (1973).  Search incident to arrest may "involve a relatively extensive exploration of the person." United States v. Robinson, 414 U.S. 218, 227 (1973)(quoting Terry v. Ohio, 392 U.S. 1, 25-6 (1968)).

Strip searches are considered invasive, but are not *per se* unconstitutional.  Police do not have indiscriminate authority to conduct strip and visual body cavity searches.  See, Fuller v. M.G. Jewelry, 950 F.2d 1437, 1446 (9th Cir. 1991).  The test to determine if a strip search violates the Fourth Amendment is whether the strip search is reasonable under the circumstances.  Bell v. Wolfish, 441 U.S. 520, 558-59 (1979).

"No Supreme Court case discusses the constitutionality of strip searches incident to arrest, which appear to fall between the 'full searches' considered by Robinson and the 'intrusions beyond the body's surface. . . .'" Allison v. GEO Group, Inc., 611 F. Supp.2d 433, 442 (E.D. Pa. 2009).  However, several Circuit Courts have found "that to be reasonable under Wolfish, strip. . . searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband. . . ." Swain v. Spinney, 117 F.3d 1, 7 (1st Cir. 1997).

Officers' suspicions must be based on specific objective facts and rational inferences "that they are entitled to draw from those facts in light of their experience.  The standard requires individual suspicion, specifically directed to the person who is targeted for the strip search." Hartline v. Gallo, 546 F.3d 95, 100 (2d Cir. 2008)(quoting Varrone v. Bilotti, 123 F. 3d 75, 79 (2d Cir. 1997).

Detective Scherf lawfully arrested Clemons based on three outstanding arrest warrants for drug trafficking and therefore, a search incident to arrest was a reasonable warrantless search

under the Fourth Amendment. Based on testimony that this Court finds credible, Detective Scherf and Corporal Zimmerman had reasonable suspicion to believe that Clemons was concealing contraband at the time of his arrest based on specific facts and rational inferences in light of their experience. The totality of the circumstances amounted to reasonable suspicion that Clemons may be concealing contraband and warranted Clemons' subsequent strip search.

Specifically, Detective Scherf had known Clemons for ten years and was aware of his history of drug trafficking activities from Clemons' interactions with the Indiana Borough Police Department, fellow police officers and their reports, and citizen complaints. Detective Scherf was also aware of Clemons' violent tendencies and had information from a confidential informant that Clemons carried a firearm during his drug sales.[5]

Furthermore, Clemons was arrested based on three outstanding warrants related to three separate controlled drug purchases. At the time of his arrest, Clemons was found to be in possession of a large amount of currency in small bills which is indicative of current and active drug trafficking.[6] Clemons was also carrying two cellular telephones which were "continuously ringing at the time of his arrest and continued throughout the processing period." (Tr. 12-13). This Court finds that possession of a large amount of currency in small bills and multiple cell phones are specific circumstances that would reasonably raise suspicion of active, recent, and

---

[5] It is reasonable for Detective Scherf to believe that Clemons would engage in drug sales the evening of October 17, 2007 and therefore Detective Scherf had reasonable suspicion Clemons could be carrying a firearm.

[6] This was later determined to be $845 in U.S. currency. Detective had not known Clemons to have consistent employment over the ten years he had known Clemons. Over the course of his contacts with Clemons, Detective Scherf observed Clemons driving several high-end vehicles despite a lack of employment.

8

ongoing drug trafficking activities.[7] Detective Scherf is also aware based upon his training and personal experience, that it is common for drug traffickers to hide contraband in their underwear or in a body cavity.

Detective Scherf and Corporal Zimmerman also had specified knowledge about Clemons which amounted to reasonable suspicion to warrant a strip search. Specifically, Detective Scherf had previously discussed with Corporal Zimmerman the possibility that Clemons would be trafficking narcotics as it was Homecoming Weekend at Indiana University of Pennsylvania. Detective Scherf's reasonable suspicion was furthered based on information from a confidential informant that Clemons had previously hidden contraband in his underwear.[8] The confidential informant had previously proved reliable and elements of his/her claims were verifiable. Therefore, Detective Scherf and Corporal Zimmerman had reasonable suspicion both that Clemons was actively engaging in drug trafficking on the evening of October 13, 2007, and that as in the past, Clemons may be concealing contraband in his underwear to evade police detection.

Based on the foregoing, this Court finds that Detective Scherf and Corporal Zimmerman possessed reasonable suspicion based on specific facts and reasonable inferences therefrom that Clemons was engaged in ongoing drug activities at the time of his October 13, 2007 arrest. This Court further finds that, as required under Wolfish, 441 U.S. 520, based on the totality of the circumstances, Detective Scherf and Corporal Zimmerman possessed reasonable suspicion that

---

[7] The record contains additional specific facts that would raise reasonable suspicion including Clemons' known history of violence and Clemons' responses to Corporal Zimmerman's questioning prior to the search and Clemons' facial expressions. (Tr. 29).

[8] This was corroborated by Detective Scherf's conversation with Detective Schuller who was involved in the incident when Clemons allegedly concealed contraband in his underwear. (Tr. 19).

Clemons was concealing contraband on his person at the time of his arrest, warranting and necessitating a strip search. The subsequent strip search incident to Clemons' valid arrest was a reasonable search under the Fourth Amendment and evidence derived therefrom will not be suppressed.

## IV. CONCLUSION

For the foregoing reasons, Defendant Clemons' Motion to Suppress Evidence (Doc. No. 49) will be **DENIED**.[9] An appropriate order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record

---

[9] Defendant also filed a Motion to Produce Evidence Which The Government Intends to Use Under Federal Rules Of Evidence 404(B) And 609 With Citation of Authority on May 15, 2009. (Doc. No. 48). Said Motion is DENIED without prejudice for Defendant to file a Motion in Limine at the appropriate time.